IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| REGINA JOHNSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. TJS-19-0854 |
| WAL-MART STORES, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") Motion for Summary Judgment ("Motion").[1] (ECF No. 24.) The matter has been fully briefed (*see* ECF Nos. 24, 28 & 30) and no hearing is necessary.[2] *See* Loc. R. 105.6. For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted.

**I. INTRODUCTION**

    **A. Factual Background**

The following facts are presented and considered by the Court in the light most favorable to the Plaintiff Regina Johnson ("Ms. Johnson") because she is the non-moving party. On February 20, 2016, Ms. Johnson went shopping at the Wal-Mart store located in Clinton, Maryland to purchase a baby stroller as a baby shower gift. (ECF No. 24-2 at 4.) In the store's infant department, Ms. Johnson first looked at the strollers on display in one aisle and inspected

---

[1] On June 20, 2019, this case was referred to me for all proceedings pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF No. 16.)

[2] The Defendant's Motion to Strike Plaintiff's Untimely Opposition to Defendant's Motion for Summary Judgment (ECF No. 29) is denied. The Defendant has not demonstrated any prejudice since the length of the delay was just a matter of days. Nevertheless, Plaintiff's counsel is reminded to comply with the Local Rules in the future.

them by touching the tires and feeling the material. (*Id.* at 5.) Ms. Johnson then walked to a second aisle where additional strollers were displayed. (*Id.*) Eventually, Ms. Johnson saw a Jeep stroller that was of interest to her. (*Id.*) Ms. Johnson touched the armrest, the seat, the back, the net that holds a bottle, and the wheel of the Jeep stroller. (*Id.* at 6-7.) Ms. Johnson decided to purchase the Jeep stroller. (*Id.*) Ms. Johnson was aware that the strollers in both aisles were displayed on metal shelving units and affixed by zip-ties to keep them from moving off the shelf. (*Id.* at 7.) Ms. Johnson did not remove any zip-ties or attempt to take the Jeep stroller down from the display. (*Id.* at 8.) Ms. Johnson did not realize that the Jeep stroller was not zip-tied to the shelf. (*Id.*)

Under the shelf containing the display strollers, Wal-Mart kept a stock of strollers in stacked boxes for customers to purchase. (*Id.*) Ms. Johnson squatted down to grab a box containing a Jeep stroller and did not touch the stroller display. (*Id.* at 9-10.) As Ms. Johnson pulled the box towards her, the Jeep stroller on display "rolled" and struck Ms. Johnson on her head, neck, back and arm, causing her injuries. (*Id.*) An unidentified male shopper yelled "watch out" while Ms. Johnson was attempting to pull the box out. (*Id.* at 10.) An unidentified female shopper notified an unidentified female Wal-Mart employee, who came to Ms. Johnson's assistance. (*Id.* at 11.) Ms. Johnson saw no Wal-Mart personnel in the infant department before the incident. (*Id.*) Ms. Johnson's mother and sister were in the store with her at the time but did not observe the incident. (*Id.* at 4.) Plaintiff's mother testified that there were no Wal-Mart employees in the stroller section at the time of the incident. (ECF No. 24-4 at 5.) Plaintiff's sister provided similar testimony, stating that she saw Wal-Mart personnel "[c]oming in and out," that they may have been stocking merchandise in other aisles, and that no employees were "specifically right there" in the area where the incident occurred. (ECF No. 24-5 at 4.) The

unidentified female Wal-Mart employee said to Ms. Johnson after the incident: "Dammit. They were supposed to be tied down." (ECF No. 24-2 at 11.) The employee called for the assistant store manager, Jason Witherspoon. Mr. Witherspoon told Ms. Johnson that the strollers were "all supposed to be toggled down." (*Id.* at 13.) Ms. Johnson testified that she believed neither the unidentified female Wal-Mart employee nor Mr. Witherspoon were aware that the Jeep stroller was not zip-tied to the metal display shelf before it fell on her. (*Id.* at 13.) Ms. Johnson declined an ambulance, completed her purchase, and left the Wal-Mart store. (*Id.*)

**B.     Procedural History**

Ms. Johnson filed her Complaint in the Circuit Court for Prince George's County, Maryland on January 25, 2019. (ECF No. 2.) Wal-Mart removed the case to this Court on March 21, 2019. (ECF No. 1.) Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 1391, venue is proper in this Court as a substantial part of the events or omissions giving rise to the claim occurred in this district. Since this Court's jurisdiction is based on diversity of citizenship, the principles outlined in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require the application of state law to questions of substantive law. Maryland adheres to the *lex loci delicti* rule to determine the applicable law in tort actions. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744 (2000). Under this rule, the "substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 123 (1983). Because the alleged tort took place in Maryland, Maryland law governs Ms. Johnson's negligence claim. In her Complaint, Ms. Johnson alleges that Wal-Mart was negligent by failing to "keep and maintain the premises, and any items contained therein, in a safe condition." (ECF No. 2 ¶ 7.)

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest upon the mere allegations or denials of its pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

## III. DISCUSSION

In Maryland, the elements of a negligence claim are "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Chicago Title Ins. Co. v. Allfirst Bank*, 394 Md. 270, 290

(2006). In a claim involving premises liability, the status of the person injured on the property at the time of the incident is critical to determining the defendant's duty to that person. A person invited or permitted to be on another's property for purposes related to the owner's business is an invitee. *See, e.g., Wagner v. Doehring*, 315 Md. 97, 102 (1989). In this case, there is no dispute that Ms. Johnson was an invitee on the premises. The duty of the proprietor of a store to an invitee was summarized by the Court of Appeals of Maryland in *Mondawmin Corp. v. Kres*, 258 Md. 307, 313 (1970):

> The Restatement of the Law of Torts, Second, sec. 343, sets forth the standards governing the relationship of landowner and business invitee with respect to a hazardous condition. The landowner is subject to liability for harm caused by a natural or artificial condition on his land if (a) he knows or by the exercise of reasonable care could discover the condition, (b) he should expect that invitees will not discover the danger, or will fail to protect themselves against it, (c) he invites entry upon the land without (1) making the condition safe, or (2) giving a warning.

Under Maryland law, "a proprietor of a store owes a duty to his customers to exercise ordinary care to keep the premises in a reasonably safe condition, and he will be held liable for injuries sustained by a customer in consequence of his failure to do so." *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 231-32 (1965). Accordingly, the "duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers." *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388 (1997). Nevertheless, "[s]torekeepers are not insurers of their customers' safety, and no presumption of negligence arises merely because an injury was sustained on a storekeeper's premises." *Giant Food, Inc. v. Mitchell*, 334 Md. 633, 636 (1994). "The burden is upon the customer to show that the proprietor . . had actual or constructive knowledge that the dangerous condition existed," and that "that knowledge was gained in sufficient time to give the owner the opportunity to remove [the danger] or warn the

5

invitee." *Rehn v. Westfield Am.*, 153 Md. App. 586, 593 (2003) (internal quotation marks omitted). A storeowner may be deemed to have constructive notice of a dangerous condition "if it is shown that the condition existed for a length of time sufficient to permit a person under a duty to discover it if he had exercised ordinary care." *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 120 (1955). "What will amount to sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions." *Rehn*, 153 Md. App. at 593.

Wal-Mart makes two important concessions. It concedes that (1) there is no dispute that the strollers were supposed to be zip-tied to the metal display shelf and (2) the Jeep stroller that fell on Ms. Johnson was not zip-tied to the metal display shelf. (ECF No. 30 at 3.) Nonetheless, Wal-Mart contends that Ms. Johnson has not produced evidence that it had actual or constructive notice of the dangerous condition. Specifically, Wal-Mart maintains that there is no evidence that it knew or should have known that the Jeep stroller was not zip-tied to the metal display shelf pursuant to store protocol.

Ms. Johnson argues that Wal-Mart's Motion must be denied because "there is a significant dispute as to material facts as to whether Wal-Mart owed Plaintiff a duty as an invitee in its store, and whether such duty was breached." (ECF No. 28 at 1.) Of course, there is no dispute that Wal-Mart owed Ms. Johnson a duty on the day of the incident. The heart of the dispute is whether "Wal-Mart was on notice that the Jeep stroller was not zip-tied to the display shelf, thus creating a dangerous condition." (*Id.*) If Wal-Mart had actual or constructive notice of

6

the dangerous condition, its Motion must be denied. But if there is no evidence of such notice, Ms. Johnson will be unable to establish an essential element of her negligence claim, and Wal-Mart will be entitled to summary judgment.

In support of its Motion, Wal-Mart relies on the the Affidavit of Mr. Witherspoon, the assistant store manager working at the time of the incident. (ECF No. 24-3.) In his Affidavit, Mr. Witherspoon states that as of the date of the incident, baby strollers were displayed on a shelf raised approximately 43 inches off the ground. (*Id.* ¶ 5.) Pursuant to "store protocol, the display baby strollers were zip-tied to the metal display shelf." (*Id.*) The zip-ties were made of black, heavy duty, thick plastic "that can only be removed with force or by scissors or a knife." (*Id.*) The zip-ties were "affixed around each wheel of the strollers to keep them from moving." (*Id.*) Boxes containing baby strollers for customers to purchase were placed on the shelf below the display strollers. (*Id.* ¶ 6.) When he responded to a page concerning Ms. Johnson's incident, he "observed a zip-tie on the shelf where the stroller should have been that had been cut." (*Id.* ¶ 7.) Mr. Witherspoon did not know that the zip-tie had been cut prior to the incident, and he is not aware of who or what caused the zip-tie to be cut and removed from the stroller. (*Id.* ¶ 8.) In addition, Mr. Witherspoon did not receive any reports of damaged zip-ties or other customer accidents involving baby strollers falling from the display shelf prior to Ms. Johnson's incident, and he is not aware of any such reports. (*Id.* ¶ 9.)

Ms. Johnson argues that Wal-Mart had notice of the dangerous condition because it was store protocol that the display strollers be secured to the shelf by zip-ties. (ECF No. 28 at 5.) In addition, Ms. Johnson suggests that the assistant manager's offer to give Ms. Johnson the Jeep stroller and anything else in her cart free of charge demonstrates that Wal-Mart admitted to having notice of the condition. Finally, Ms. Johnson points out that Wal-Mart employees were in

7

the vicinity of the baby stroller aisle at the time of the incident, such that they could have known of the dangerous condition. (*Id.* at 6.)

Ms. Johnson's arguments and the evidence she cites are not sufficient to establish that Wal-Mart had actual or constructive notice that the stroller was not properly secured to the shelf. Although she points to statements made by an unidentified female employee and the assistant manager *after* the incident occurred, this evidence does not demonstrate that Wal-Mart had actual or constructive notice of the dangerous condition *before* the incident. *See Groat v. Wal-Mart Stores, Inc.*, No. WGC-10-235, 2010 WL 5391515, at *10 (D. Md. Dec. 20, 2010) ("Mrs. Groat has not presented any evidence about 'time on the floor' nor is there any statement by a Wal–Mart employee indicating the store was aware of the dangerous condition *before* Mrs. Groat slipped and fell."); *see also Burwell v. Easton Mem'l Hosp.*, 83 Md. App. 684, 690 (1990) ("[*Keene v. Arlan's Department Store*, 35 Md. App. 250 (1977)] is clearly distinguishable from the case before us in that, unlike the cashier in *Keene*, the nurse said nothing to indicate that she had been aware of the salad on the stairs before appellant fell.").

The record contains no evidence that would allow a reasonable jury to conclude that Wal-Mart had actual or constructive knowledge that the Jeep stroller was not affixed by zip-ties to the metal display shelf. Regarding the unidentified employees in the vicinity of the stroller aisles and the assistant manager, Ms. Johnson herself testified that she did not believe they knew of the dangerous condition before the stroller fell on her. (ECF No. 24-2 at 13.) And to the extent that employees working in the store were "coming and going" and "in the area" of the infant department as testified to by Ms. Johnson's mother and sister, this is insufficient evidence of notice. The "proximity of a store employee to a dangerous condition is not in itself sufficient to establish actual knowledge of a dangerous condition." *Wiseman v Wal-Mart Stores, Inc.*, No.

8

SAG-16-4030, 2017 WL 3334858, *4 (D. Md. Aug. 4, 2017); *see also Jones v. Shoppers Food Warehouse Corp.*, No. JKS-15-2096, 2016 WL 454951 at *2 (D. Md. Feb. 5, 2016) (holding that actual knowledge was not established even though store manager was stacking boxes right beside the spot of the plaintiff's fall); *Konka v. Wal–Mart Stores, Inc.*, 133 F.3d 915 (Table), 1998 WL 24378, at *1 (4th Cir.1998) (holding the mere fact that a store manager and an employee at the nearby counter were in close proximity to a wet spot on the floor is not in itself sufficient to establish notice).

As to constructive notice, Ms. Johnson presents no evidence to show that Wal-Mart had constructive knowledge that the Jeep stroller was not zip-tied to the metal display shelf. Under Maryland law, "courts have been reluctant to conclude that the store owner had notice where it is unclear how long the condition existed and the hazardous condition could have been created by a customer." *Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 264 (2003). Given Mr. Witherspoon's unrebutted testimony that he, as the assistant store manager, did not receive or know of any reports of damaged zip-ties or other incidents regarding a stroller falling from the metal display shelf, the Court concludes that no reasonable jury could find that Wal-Mart had constructive notice of the dangerous condition.

There is no genuine dispute that Wal-Mart lacked both actual and constructive notice of the dangerous condition that led to Ms. Johnson's purported injuries. Because notice is an

essential element of Ms. Johnson's negligence claim, Wal-Mart is entitled to judgment as a matter of law and its Motion will be granted.³

## IV. CONCLUSION

For the reasons set forth in this Memorandum Opinion, Wal-Mart's Motion for Summary Judgment (ECF No. 24) is **GRANTED**. An Order implementing this decision and closing the case will be filed separately.

Date:   January 6, 2020                                   /s/
                                                                   Timothy J. Sullivan
                                                                    United States Magistrate Judge

---

³ Wal-Mart raises other arguments that the Court does not reach, including the doctrine of open and obvious dangers, contributory negligence, and assumption of the risk. It is unnecessary to reach these arguments because the Court will grant summary judgment to Wal-Mart on the issue of notice. In addition, the Court notes that Ms. Johnson has not attempted to rely on the doctrine of *res ipsa loquitur* in opposing Wal-Mart's Motion. Accordingly, the Court will not address whether the doctrine of *res ipsa loquitur* would have required the denial of Wal-Mart's Motion.